COVINGTON DUMAS, administrator, plaintiff in error, *vs.*
JESSE ROBINSON, defendant in error.

1. Where, in March, 1864, just subsequent to the passage of the "Fund-
ing Act," by the Confederate Congress, a sheriff received, in payment
of an execution which had been four or five years in his hands, Con-
federate money and a check upon the Eastern Bank of Alabama, and
in a few days the sheriff took the money and check to the plaintiff's at-
torney, who received and receipted for the same as so much Confed-
erate money, but reserved the right to contest the validity of the pay-
ing, adding, as a "*nota bene*" to his receipt, that he should contend it
was a payment of only one-third of the nominal amount: *Held*, that
it was not error in the Court to refuse to open the judgment for more
than one-third of the amount due upon the judgment, at the time of
the judgment.
2. Where, on a motion, there are several issues of fact involved, and the
parties agree to submit the whole matter, both of law and fact, to the
Judge, who, under the agreement, enters upon the investigation, and
hears the evidence the parties have to produce: *Held*, that it is error
in the Judge to pass a judgment upon some of the issues of fact, and
refer the others to a jury.
3. Where there was a motion for the non-enforcement of a judgment
obtained before the adoption of the Constitution of 1868, on the ground
that the consideration, or cause of action, on which the judgment was
founded, was slaves, or the hire thereof, and the only proof submitted
was the record of the suit, which resulted in the judgment, and said
record failed to show affirmatively, that the consideration of the debt
was slaves, or the hire thereof, *Held*, that the construction of the record
was matter of law for the Court, and as the record did not show that
the consideration of the debt, on which the judgment was founded, was
slaves, or the hire thereof, it was error in the Court to direct an issue
to be made, and tried by a jury, of the matter in dispute.

Practice.    Payment in Confederate currency.    Slave debt.
Before Judge CLARK.    Calhoun Superior Court.    September
Term, 1869.

Elizabeth Jones averred, in her bill against Jesse Robin-
son, that she had been the wife of one Stokes, who died, leav-
ing a large estate and no heir, except herself and their daughter.
Afterwards, in 1826, she married Jones, having made an
ante-nuptial contract with him, that her half of said estate
(which had never been divided) should be held by him for her
sole and separate use, free from his marital rights.    After the

marriage, Jones took charge of all the estate, being guardian of her daughter. With the money which he received from said estate, Jones bought certain slaves, and afterwards, in 1841, died, leaving his estate much embarrassed. The securities on Jones' guardians' bond enjoined the creditors from selling said slaves. Jesse Robinson had married the daughter and wished to get her part of the estate. Cognizant of the foregoing facts, he induced Mrs. Jones, who was her husband's administratrix, to consent to a decree in the bill filed by said securities, by which all of said slaves should be sold, to satisfy the amount with which Jones stood charged, as guardian of the daughter, by promising that he would purchase all of said slaves and allow her to take half of them, at the price bid by him, in satisfaction of her half of said estate. The decree was had, the sale took place, Robinson bought all the slaves, paying nothing for them, but having his bid credited on said decree, and turned over one of them to Mrs. Jones, pursuant to said contract, and promised to carry out the whole contract. Besides this, Robinson had appropriated several lots of land, in which Mrs. Jones was equally interested with her daughter, to his own use, in fraud of Mrs. Jones' rights. Upon various pretences, Robinson had not complied, and had set up a claim of an absolute title to all the slaves, including the one turned over to her, and would not pay her share of the proceeds of said land. She prayed an account from Robinson, as her trustee, of the value and hire of her half of said slaves, and of the price bid for said land. In November, 1858, she had a decree against Robinson, as her trustee, for $2,-885 40, with a lien on said slaves. *Fi. fa.* was issued against Robinson, as principal, and L. D. Munroe, as security, (how Munroe became security does not appear by the record.) In 1869, said judgment being unpaid, Robinson delivered a certain certificate of a draft for $2,000 00 on Eastern Bank of Alabama, payable in Confederate Treasury notes, and the balance in said currency of the old issue, to the sheriff of said county for payment of the *fi. fa.*, founded on said judgment. In a few days thereafter the sheriff took said draft and Confederate Treasury notes, and delivered them and said

*fi. fa.*, (without any entry on it, except "18th March, 1864,") to Judge Vason, who was Mrs. Jones' attorney. He took them and delivered to the sheriff the following writing: "Elizabeth Jones vs. Jesse Robinson, principal, and L. D. Munroe, security. *Fi. fa.* from Calhoun Superior Court. William Rye, sheriff of said county, has this day paid to me, in Confederate Treasury notes, thirty-nine hundred and eighty-eight 40-100ths dollars, which he collected from the defendant, Robinson, on the 18th day of March instant. The money is received under the distinct agreement that it is not to affect the right of the plaintiff to contest the validity of the payment, but the question is to be left open for the decision of the Court upon the facts of the case. Albany, Ga., 24th March, 1864. D. A. VASON, Plaintiff's Attorney." The plaintiff will contend that it is a payment of only two-thirds of the *fi. fa.* "D. A. V." on it was endorsed: "Received the original *fi. fa.* from William Rye, Sheriff. 24th March, 1864. D. A. VASON, Plaintiff's Attorney."

At the next term of the Court, Vason moved that said *fi. fa.* proceed, notwithstanding said pretented payment.

Robinson's attorney resisted said motion, and moved to have said *fi. fa.* declared void, because the consideration of the debt on which it was founded was slaves and their hire. Meanwhile Mrs. Jones died, and Dumas, her administrator, became a party.

It was agreed that these motions should be heard together, and that the Judge, without a jury, should determine upon the facts as well as the law touching the same. After reading in evidence said *fi. fa.*, issued on the 6th of June, 1859, said sheriff was examined as a witness to explain the pretended payment. He said he gave Robinson no receipt, and made no entry on the *fi. fa.*, that it was not his custom to receipt *fi. fas.*, but simply to note the date of payment, and satisfy the *fi. fa.* when he paid the money to plaintiff's attorney; that he had the *fi. fa.* four or five years, had no instructions not to collect it, nor any not to take Confederate money; there was no understanding between him and Robinson that he was to return the draft and currency if plaintiffs' attor-

ney would not take it; when he went to pay Vason, he complained somewhat, but took the draft and currency and the *fi. fa.*, and gave witness said paper; he, witness, took the draft and currency as payment, *bona fide*, believing it his duty so to do. Said writing was then introduced.

ROBINSON testified, that Vason had told him, at his request, that the *fi. fa.* should not be pressed upon him till he was able to pay it, and therefore he earnestly tried to pay it, and for that purpose sold valuable property in Alabama, gave the notes for its purchase, as security for the money borrowed to make the payment; when he took the draft and currency to the sheriff, he asked him if he had any orders not to take currency, and upon his replying in the negative, he paid him as aforesaid, in good faith. They then read in evidence said bill and decree, from which the *fi. fa.* issued. In reply, Judge VASON testified, that when, on the 24th of March, 1864, Rye came to him to pay off said *fi. fa.* with said draft and currency, he refused to receive them in payment, stating to Rye that he had ordered the Clerk not to issue said *fi. fa.*, and that he, Rye, had no orders to collect it; that Rye replied, that when Robinson offered to pay the *fi. fa.*, he did not know what to do, as the Funding Act had passed, but, at Robinson's urgent solicitation, he went to the Clerk's office, got the *fi. fa.*, took said draft and currency, and told him that if they were not taken by plaintiff's attorney, he would return them to Robinson; after considerable talk, etc., he took them from Rye, protesting against it as a payment, and gave him said writing; that he would not have received it, but for the fact that in a few days it would lose one-third by law, and being a Confederate States depository, he agreed to fund the same, and holds the certificate yet; the *fi. fa.* was left with him that he might move to vacate said pretended payment, and he began said motion at the next term of the Court; he did propose, as a compromise, to satisfy two-thirds of the *fi. fa.*, and told the sheriff that in any view of it, that was all Robinson could get under the law, but Rye refused to pay on those terms, and he then took the draft and currency, and gave the writing as aforesaid; the Funding Act had been

passed several weeks, and its effect was generally understood. (It was passed 17th February, 1864.)

The Judge, believing said payment was made and accepted by the sheriff *bona fide*, ordered the *fi. fa.* credited with two-thirds of the amount paid, and to remain open as to the balance, unless it was founded in whole or in part on a debt, the consideration of which was slaves or their hire, and ordered that question to be tried by a jury. To this, Dumas, executor of Mrs. Jones excepts.

Lyon, Vason & Davis, for plaintiff in error.

W. A. Hawkins, T. L. Dunn and C. B. Wootten, by S. D. Irvin, for defendant in error.

McCay, J.

1. Under the facts of this case, as they appear in the record, we do not think the order of the Court refusing to open the judgment for more than one-third of its nominal amount, was such an error as it is the duty of this Court to correct.

The parties were at issue before him on matters of fact as well as of law, and as to questions of fact, his judgment stands upon the footing of the verdict of a jury. The question is, not "is the verdict required by the evidence," but "is it so contrary to the evidence as to be illegal?" We do not think it is without evidence, or strongly and decidedly against the weight of evidence. Leaving out all the other evidence in the case, the written receipt of the plaintiff's attorney, with its *addenda*, is enough to *support* the judgment. The sheriff carried the money and check to him, and, as appears by the receipt, he received the whole as Confederate money, but objected to *counting* the money at more than two-thirds of its nominal amount. This would seem to be the effect of the receipt by him, as he made it. If he did not accept it as payment in some amount, why did he take it at all? His written objection that he would contend it was only good for two-thirds, is strong evidence that it was taken for at least that. It is true, by parol statements, the witness.

modifies and explains the meaning of this receipt and notice here, but we do not feel satisfied that the explanation was such as to justify us in setting aside the judgment of the Court on this point.

2. Without question, when, in a motion before a Court a question of fact arises, the Judge may, of his own motion, order a jury trial. By our practice it is also true that either or both of the parties may, in such cases, *demand* a jury trial. Here the parties, by mutual consent, waived this right as to the several issues, and agreed to submit the whole case to the Judge. The Judge accepted the duty cast upon him, (which he was not bound to do,) and entered upon the investigation, hearing all the evidence on all the points which the parties saw fit to introduce.

3. It was not fair to the movant, who had waived his right to a jury trial, for the Court to find against him on one of the issues of fact and refer the other to a jury. Perhaps had the movant known his case was to go to a jury on this point, he would not have waived it as to the other, and we are of the opinion that the Court ought not to have directed a jury trial under the circumstances.

The judgment of the Court was that the evidence showed that a part of the consideration of the judgment was slaves, but that he could not from *the evidence* determine how large a part of the consideration was of that character. Was not the failure of the defendant's evidence to establish affirmatively the amount of the consideration, based on slaves, a good reason to deny his motion? Here was a judgment. It lay upon the defendant to show the defect in it. In the judgment of the Court his evidence shows that there is a portion of the consideration of this character, but not how much. We are of opinion that the burden of proof was on the defendant, and that he failed, according to the judgment of the Court, to make out his case, and the Court ought to have found this issue against him for this reason.

But there was no evidence on the issue, about the consideration, but the record. That was matter for the Court. Had the case gone to a jury, the effect and construction of the

Dumas *vs.* Robinson.

record was with the Court, and, in fact, the whole matter turned on that construction. The Court ought to have construed it and given his judgment accordingly.

In our judgment this record did not show that the consideration of the judgment was slaves, but the contrary. Mrs. Jones had a claim against the estate of her deceased husband in the nature of a trust; so had the defendant. It was agreed that if she would withdraw her proceedings and permit the property of the deceased husband to be sold, the defendant would give her certain advantages and rights in the property he might purchase at the sale. He made at the sale a purchase of certain slaves, and then refused to comply with his contract, and she filed her bill in equity against him, setting up the facts and praying relief. The decree was for so much money, and the very fact that the decree gives the judgment a lien on the negroes, shows that the negroes were only considered as collateral to her claim against him. While, therefore, we see no error in the Court in refusing to open the judgment for more than one-third, we think the Court ought to have directed the judgment to proceed for the one-third left unpaid, and as the whole evidence is matter of record, we so instruct the Court. The parties have had their day in Court. They have introduced their evidence *pro* and *con*, and the Court, by its judgment that the evidence did not show how much of the consideration was slaves, has, in effect, decided the execution to be one over which the Court had jurisdiction. The error of the Court is in ordering the jury. The order ought to be that the *fi. fa.* proceed for the one-third still unpaid.

Judgment reversed.